**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**
**CASE NUMBER:**

| | |
|---|---|
| Nationwide General Insurance Company<br><br>                               Plaintiff,<br><br>v.<br><br>Patricia Crocker, Bonnie Brae Homeowners' Association, Inc., HOA Community Management, LLC, Charlene Rice, Jeff Dumpert, Tim Roach, Janine Wyman, Julie Hrobsky, and Donald Peake,<br><br>                         Defendants. | **COMPLAINT**<br>**(Declaratory Judgment)** |

The Plaintiff, Nationwide General Insurance Company (hereinafter "Nationwide"), seeks declaratory relief to determine the rights of the parties, and alleges and shows as follows:

## JURISDICTION & VENUE

1.      Plaintiff Nationwide General Insurance Company is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio.  Nationwide is authorized to operate and issue insurance policies in the State of South Carolina.

2.      Upon information and belief, Defendant Patricia Crocker is a citizen and resident of Greenville County, South Carolina.

3.      Upon information and belief, Defendant Bonnie Brae Homeowners' Association, Inc. (hereinafter "Bonnie Brae HOA") is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina.

4.     Upon information and believe, Defendant HOA Community Management, LLC (hereinafter "HOA Community Management") is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina.

5.     Upon information and belief, Defendant Charlene Rice is a citizen and resident of Greenville County, South Carolina.

6.     Upon information and belief, Defendant Jeff Dumpert is a citizen and resident of Greenville County, South Carolina.

7.     Upon information and belief, Defendant Tim Roach is a citizen and resident of Greenville County, South Carolina.

8.     Upon information and belief, Defendant Janine Wyman is a citizen and resident of Greenville County, South Carolina.

9.     Upon information and belief, Defendant Julie Hrobsky is a citizen and resident of Greenville County, South Carolina.

10.     Upon information and belief, Defendant Donald Peake is a citizen and resident of Greenville County, South Carolina.

11.     This matter is brought under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and Rule 57 Fed. R. Civ. P.; there is a real and justiciable controversy between the parties, and by these proceedings Plaintiff asks this court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

12.     Upon information and belief, the conduct that gave rise to this Complaint occurred in Greenville County, South Carolina.

## FACTS

13.     Nationwide issued a homeowners insurance policy, Policy No. 61 39 HQ 157087, to Defendant Patricia M. Crocker on June 17, 2016 (hereinafter the "Policy").  The Policy has been continuously renewed and is currently in effect until June 14, 2019

14.     At its inception, the Policy included liability limits of $100,000 per occurrence.

15.     Beginning July 26, 2017, Crocker increased her liability limits to $300,000 per occurrence.

16.     The Policy provides in pertinent part:

**2018-2019 POLICY PROVISIONS**
Form H 00 03 07 16

**DEFINITIONS**

* * *

**4.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

* * *

**11.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
**a.** "Bodily injury"; or
**b.** "Property damage".

* * *

**13.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

* * *

**SECTION II – LIABILITY COVERAGES**
**A.  Coverage E – Personal Liability**
If a claim is made or a suit is brought against an "insured" for damages due to an "occurrence" resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property, we will:
   1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
   2. Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit.

3

Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

\* \* \*

## SECTION II – EXCLUSIONS

\* \* \*

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

\* \* \*

**8. Sexual Molestation, Corporal Punishment, Physical Or Mental Abuse, Or Harassment**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment, physical or mental abuse, or harassment, including sexual harassment, whether actual, alleged or threatened;

\* \* \*

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1. Liability:**

**a.** for any loss assessment charged against you as a member of an association or community of property owners, except as provided in **D.** Loss Assessment under Section **II**—Additional Coverages;

\* \* \*

**7.** Liability for any of the following:

**a.** Judgments;

**b.** Costs;

**c.** Attorney fees; or

**d.** Claims

against an "insured" for punitive or exemplary damages. Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

4

In addition, coverage does not apply for restitution, if the result of a criminal court order.

\* \* \*

## SECTION II – ADDITIONAL COVERAGES

\* \* \*

### D. Loss Assessment

1. We will pay up to the Loss Assessment Coverage limit shown on the Declarations for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

(1) Is elected by the members of the corporation or association of property owners; and

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

\* \* \*

## SECTION II – CONDITIONS

\* \* \*

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if the person seeking coverage fails to comply with the following duties. You will help us by seeing that these duties are performed:

1. Give notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the named insured shown in the Declarations;

   b. The time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses.

\* \* \*

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence"

\* \* \*

**2016-2018 Policy Provisions**
  **Form HO-39-A**
    **SECTION II – LIABILITY COVERAGES**
    **Additional definitions applicable to these coverages**

5

For purposes of these coverages only:

1. "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

\* \* \*

4. "OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition. The **occurrence** must be during the policy period.

\* \* \*

**Coverage agreements**
**Coverage E – Personal liability**
**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

**SECTION II – LIABILITY EXCLUSIONS**
Coverage E – Personal liability and Coverage F – Medical payments to others do not apply to **bodily injury** or **property damage**:

a) caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

\* \* \*

l) arising from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

\* \* \*

2. Coverage E – Personal liability does not apply to:

a) liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

\* \* \*

**SECTION II – LIABILITY CONDITIONS**

\* \* \*

6

3.   **Duties after loss.**  In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.
   a)  give notice to **us** or **our** agent as soon as practicable setting forth:
      (1) identity of the policy and **insured**.
      (2) time, place, and facts of the accident or **occurrence**.
      (3)  names and addresses of the claimants and witnesses.
   b)  immediately forward to **us** every document relating to the accident or **occurrence**.

* * *

**POLICY COVERAGE OPTIONS**

* * *

**Option M.   Personal injury coverage** under **Coverage E – Personal liability**, the definition of **bodily injury** is amended to include **personal injury**.

**Personal injury** means injury as a result of:

* * *

3.  Libel, slander, defamation of character . . . .

Section II – Liability exclusions do not apply to **personal injury**.

**Personal injury** coverage does not apply to:

   1. Liability assumed by an **insured** under a contract or agreement.

* **

**Option N. Loss assessment coverage**.

**We** agree to pay **your** share of an assessment charged against all members of the **Association**. "**Association**" means the management body of the property owners. They must have common property interest with **you**.  The common property must be part of the housing development where **you** live, as shown on the Declarations.  **We** will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:
1.  A direct loss to property collectively owned by the **Association**. It must be caused by a peril covered under Section I of this policy;
2.  An event of the type covered under Section II of this policy; or
3.  Damages the **Association** is legally obligated to pay due to **personal injury** as a result of:
   a)  false arrest, false imprisonment, wrongful eviction, or wrongful entry'
   b)  wrongful    detention,    malicious    prosecution, misrepresentation, or humiliation;
   c)  libel, slander, defamation of character; or
   d)  invasion of rights of privacy.

7

* * *

17.    Defendant Patricia Crocker never purchased Option M or Option N coverage under the Policy.

18.    On November 3, 2016, Defendant Bonnie Brae HOA filed a complaint in the Greenville County Court of Common Please seeking declaratory and injunctive relief.  After the filing of two amended complaints to add parties, the case is styled as *Roman Kanach, Tom Wells, Patricia Crocker, and Nancy Gresham, Individually, and derivatively, on behalf of All Members of the Bonnie Brae Homeowners Association, Inc. vs. HOA Community Management, LLC, and Charlene Rice, individually and as agents of the Bonnie Brae Homeowners Association, Inc., and Jeff Dumpert, Tim Roach, Janine Wyman, Julie Hrobsky, and Donald Peake, individually, and in their capacity as board members of the Bonnie Brae Homeowners Association, Inc.*, civil action no. 2016-CP-23-06406 (hereinafter the "underlying complaint").

19.    The underlying complaint alleges Roman Kanach, Tom Wells, Patricia Crocker, and Nancy Gresham (collectively the "challengers") attempted to use proxies at a February 27, 2016 meeting of the Bonnie Brae HOA to vote out the sitting board, to include Defendants Dumpert, Roach, Wyman, Hrobsky, and Peake (collectively the "sitting board"), and vote themselves onto the board.

20.    The underlying complaint alleges the sitting board found the proxies to be invalid and, as a consequence of the invalid proxies, the meeting lacked a quorum.  Therefore, the sitting board would not allow an election to take place.

21.    The underlying complaint alleges the challengers purported to hold a special meeting on April 28, 2016, again attempting to use proxies to vote out the sitting board and vote

themselves onto the board.  Once again, the sitting board found the proxies to be invalid and continued operating as the controlling board of the association.

22.    In response to the underlying complaint, Defendants HOA Management Company, Rice, Dumpert, Roach, Wyman, Hrobsky, and Peake filed an answer and a counterclaim alleging defamation by the challengers verbally and through online posts on websites targeted at members of the Bonnie Brae HOA. The counterclaim also asserts numerous other causes of action, including fraud/construct fraud, tortious interference with contract, conspiracy, outrage/intentional infliction of emotional distress, abuse of process, and negligence/gross negligence.

23.    The defendants in the Underlying Action replied to the counterclaim on May 30, 2018.

24.    Defendants HOA Community Management, Rice, Dumpert, Roach, Wyman, Hrobsky, Peake, and Bonnie Brae HOA amended their counterclaim on June 8, 2018 adding their claim for a special assessment against the defendants in the Underlying Action, including Defendant Crocker.

25.    The defendants in the Underlying Action filed a reply to the amended counterclaim on June 20, 2018.

26.    Nationwide never received copies of the suit papers or notice from Defendant Crocker prior to the filing of the reply to the amended counterclaim on June 20, 2018.

27.    Nationwide is currently defending Patricia Crocker under a reservation of rights.

## FOR A FIRST DECLARATION

28.    The Plaintiff repeats, re-alleges, and incorporates paragraphs 1–27 as if fully set forth verbatim herein.

29.    The Policy provides liability coverage for damages "due to an 'occurrence'."

30. The 2016-2018 version of the Policy defines an "occurrence" as "'bodily injury' or 'property damage' resulting from an accident, including continuous or repeated exposure to the same general condition. The 'occurrence' must be during the policy period."

31. The 2018-2019 version of the Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage'."

32. Therefore, the Policy only provides coverage for an "occurrence," which requires "bodily injury" or "property damage."

33. Under the 2016-2018 version of the Policy, "bodily injury" includes "bodily harm, including resulting care, sickness or disease, loss of services or death."

34. Under the 2018-2019 version of the Policy, "bodily injury" includes "bodily harm, sickness or disease, including required care, loss of services and death that results."

35. Under both versions of the Policy, "bodily injury does not include emotional distress, mental anguish, humiliation, mental distress, or injury, or any similar injury unless the direct result of bodily harm."

36. The counterclaim does not assert any physical contact between Patricia Crocker and Defendant Rice that would constitute a "bodily injury" under the terms of either version of the Policy.

37. The counterclaim does not assert any emotional distress, mental anguish, humiliation, mental distress, or injury that was a direct result of bodily harm.

38. Under the 2016-2018 version of the Policy, "property damage" means "physical injury to or destruction of tangible property."

39.    Under the 2018-2019 version of the Policy, "property damage" means physical injury to, destruction of, or loss of use of tangible property."

40.    The counterclaim does not allege any physical injury to, destruction of, or loss of use of any tangible property.

41.    Thus, the counterclaim does not allege any "occurrence" that would be covered by the Policy.

42.    Therefore, Nationwide is entitled to a declaration that the Policy provides no liability coverage for the counterclaims alleged against Defendant Patricia Crocker in the Underlying Action.

## FOR A SECOND DECLARATION

43.    The Plaintiff repeats, re-alleges, and incorporates paragraphs 1–42 as if fully set forth verbatim herein.

44.    Option M Coverage under the 2016-2018 version of the Policy would amend the definition of "bodily injury" to include "personal injury," which would include "injury as a result of . . . libel, slander, [or] defamation of character . . .."

45.    However, Defendant Crocker did not purchase Option M Coverage for the 2016-2018 Policy years, and there was no such coverage in the 2018-2019 Policy year.

46.    Thus, the Policy did not provide personal injury coverage for defamation, libel, and slander claims.

47.    Therefore, Nationwide is entitled to a declaration that the Policy provides no liability coverage for the defamation/libel/slander counterclaims alleged against Defendant Crocker in the Underlying Action.

## FOR A THIRD DECLARATION

48.    The Plaintiff repeats, re-alleges, and incorporates paragraphs 1–47 as if fully set forth verbatim herein.

49.    The 2016-2018 version of the Policy excludes coverage for a "bodily injury" that is "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct."

50.    The 2018-2019 version of the Policy excludes "'Bodily injury' or 'property damage' which is expected or intended by an 'insured', even if the resulting 'bodily injury' or 'property damage': a. Is of a different kind, quality or degree than initially expected or intended; or b. Is sustained by a different person, entity or property than initially expected or intended."

51.    The counterclaim alleges fraud, which requires intent.

52.    The counterclaim alleges civil conspiracy, which requires intent.

53.    To support the defamation/libel/slander claim, the counterclaim alleges Defendant Crocker acted with common law malice, which requires intent.

54.    The counterclaim alleges Defendant Crocker committed abuse of process by knowingly filing false allegations in the complaint, which requires intent.

55.    Therefore, Nationwide is entitled to a declaration that the Policy provides no liability coverage for the fraud, civil conspiracy, defamation/libel/slander, and abuse of process claims alleged against Defendant Crocker in the Underlying Action.

## FOR A FOURTH DECLARATION

56.    The Plaintiff repeats, re-alleges, and incorporates paragraphs 1–55 as if fully set forth verbatim herein.

57.    The 2016-2018 version of the Policy excludes coverage for "bodily injuries" arising from acts or omissions relating directly or indirectly to harassment, whether actual, alleged or threatened.

58.    The 2018-2019 version of the Policy excludes coverage for "'Bodily injury' or 'property damage' arising out of…physical or mental abuse, or harassment…whether actual, alleged or threatened."

59.    The counterclaim alleges Defendant Crocker filed the Underlying Action as a form of harassment, which constitutes the willful act element of the abuse of process claim.  The counterclaim also alleges other acts of abuse and/or harassment.

60.    Therefore, Nationwide is entitled to a declaration that is policy provides no liability coverage for counterclaims alleged against Defendant Crocker in the Underlying Action.

**FOR A FIFTH DECLARATION**

61.    The Plaintiff repeats, re-alleges, and incorporates paragraphs 1–60 as if fully set forth verbatim herein.

62.    The 2016-2018 version of the Policy provides coverage for loss assessments charged against all members of an association if Option N. coverage is purchased.

63.    The 2018-2019 version of the Policy provides coverage for the named insured's share of a loss assessment charged against her, as owner or tenant of a residence premises during the policy period by an association of property owners, when the assessment is made as a result of: (1) "bodily injury" or "property damage" not excluded from coverage; or (2) liability for an act of a director, officer, or trustee in the capacity as a director, officer or trustee, provided such person is elected by the members of an association of property owners and serves without deriving any income from the exercise of duties which are solely on behalf of an association of property owners.

64.    The counterclaim seeks recovery of all attorneys' fees spent in defending the action and assert that Defendant Crocker owes these damages as a special assessment.

65.    Attorneys' fees do not constitute "bodily injury" or "property damage" under the Policy.

66.    The counterclaim asserts that Defendant Crocker was not an officer, director or trustee of the association at the relevant time.

67.    The special assessment alleged against Defendant Crocker would not be charged against all members of the association.

68.    Therefore, Nationwide is entitled to a declaration that the Policy does not provide coverage for the special assessment alleged in the counterclaim against Defendant Crocker.

## FOR A SIXTH DECLARATION

69.    The Plaintiff repeats, re-alleges, and incorporates paragraphs 1–68 as if fully set forth verbatim herein.

70.    The 2016-2018 version of the Policy requires an insured to notify Nationwide of an "occurrence" as soon as is practicable and to immediately forward to Nationwide all documents relating to the "occurrence."

71.    The 2018-2019 version of the Policy requires an insured to notify Nationwide of an "occurrence" as soon as is practical and to promptly forward to Nationwide all notices, demands, summons or other process relating to the "occurrence."

72.    Defendant Crocker replied to the counterclaim in the Underlying Action on May 30, 2018 without notifying Nationwide of the counterclaim.

73.    Defendants HOA Community Management, Rice, Dumpert, Roach, Wyman, Hrobsky, Peake, and Bonnie Brae HOA amended their counterclaim on June 8, 2018 adding their claim for a special assessment against the defendants in the Underlying Action.

74.    Defendant Crocker filed a reply to the amended counterclaim on June 20, 2018 without notifying Nationwide of the counterclaim.

75.    Nationwide was prejudiced by Defendant Crocker's failure to timely notify Nationwide of the counterclaim and failure to timely forward suit papers.

76.    Therefore, Nationwide is entitled to a declaration that its policy does not provide coverage for the counterclaims asserted against Defendant Crocker because it was not timely notified of the counterclaims and Defendant Crocker failed to comply with her duties owed under the Policies.

**WHEREFORE**, Nationwide requests that this honorable Court inquire into these matters and declare that, together with the costs of this action and such other and further relief as the court may deem just and proper:

1. The Policy does not provide liability coverage for the claims asserted in the counterclaim because they do not allege an "occurrence" resulting in "bodily injury" or "property damage" under the terms of the Policy;

2. The Policy does not provide coverage for the defamation/libel/slander claims alleged in the counterclaim because the Policy does not provide "personal injury" coverage;

3. The Policy does not provide liability coverage for the claims asserted in the counterclaim because they stem from alleged intentional acts, which the Policy excludes from coverage;

4. The Policy does not provide liability coverage for the claims asserted in the counterclaim because they stem from alleged abuse and/or harassment, which the Policy excludes from coverage;

5. The Policy does not provide liability coverage for the claim for a special assessment because the special assessment sought does not fall within the scope of the Policy's assessment coverage;

6. The Policy does not provide liability coverage for the claims asserted in the counterclaim because the insured failed to comply with the Policy's notice requirements;

7. Nationwide does not owe a duty to defend or indemnify Defendant Crocker for any claims asserted in the counterclaim; and

8. For such other and further relief as the Court deems just and proper.

MURPHY & GRANTLAND, P.A.

*S/Wesley B. Sawyer*

_____
Wesley B. Sawyer (Fed Bar #11244)
4406-B Forest Drive (29206)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100
wsawyer@murphygrantland.com
Attorneys for the Plaintiff

Columbia, South Carolina
April 8, 2019